J. F. SCHMIDT BROS. CO.

*v.*

STATE OF ILLINOIS.

*Opinion filed December 11, 1916.*

STATE CONTRACTS—*facts held sufficient to justify an award.* In this claim a dispute arose over the interpretation which should be placed upon the specifications as to painting certain walls of the building—the Court held that the specifications did not call for painting the walls.

Brown, Hay & Creighton, for Claimant.

P. J. Lucey, Attorney General, for State.

Claimant, is an Illinois corporation which on October 18, 1912, entered into a written agreement with the Board of Trustees of the Western Illinois State Normal School for the construction of "The Womans' Building," at Macomb.

Plans had been prepared by W. Carbys Zimmerman, the then State Architect, and, prior to the completion of the building he was succeeded by James B. Dibelka as State Architect, who assumed supervision of the job.

Claimant had been paid on contract price the sum of $63,022.00 and has given credit because of deductions in the amount of $1,295.50. The original contract price was $63,940.00. There remains in dispute and unadjusted the following items:

A.    $25.00 on account of an off-set between the living and reception rooms.

B.    $96.00 deduction claimed by trustees on account of sewer not being raised.

C.    $965.00 deductions made by trustees on account of claimant refusing to paint the plastering in the building.

D.    Damages claimed by claimant occasioned by alleged delay on the part of the board of trustees in exercising its option on roofing and metal.

On April 15, 1914, Architect Dibelka issued his certificate covering a balance due of $1,243.80. This was delivered to the claimant and in turn delivered by it to the board of trustees. The board, however, refused to pay.

The $25.00 claim appears to have been paid. An allowance of $85.00 was made and paid to the contractor because of a mistake in the drawing of certain "I" beams. The architect made this allowance to cover the extra expense due to this mistake, and it is apparent that the $25.00 was included in the payment of $85.00.

The claim for $96.00 arises out of the following state of facts: The plans and specifications called for a tile sewer under the unexcavated portion of the building. The sewer was installed by the contractor and it was afterwards discovered that the elevation was improper. The contractor made a bid to raise this sewer and this was accepted. The sewer as originally laid by the plumber was of iron pipe, where the plans called for tile. In the sewer as raised, the contractor used tile and the board insisted upon iron, claiming that because the contractor had seen fit to use iron in the first place, it should use it in the relaid sewer. This the contractor was under no obligationo to do, inasmuch, as the original specifications called for tile and his bid for raising the sewer was according to the original plans and specifications. The architect in a letter to the contractor dated May 19, 1913, stated that he had given no order for a change in the materials to be used. The State claims that in a certain agreement made September 30, 1913, the contractor withdrew this claim of $96.00. This agreement appears in the evidence as State's Exhibit "D", and recites by way of preamble that credits have been agreed upon among others, "sewer not raised, ninety-six dollars." It purports to be made for the purpose of removing funds from the hands of the treasurer of the school and placing it in the hands of another, and further states that, "nothing herein contained shall be construed as changing or modifying in any way the terms and conditions of the contract," etc. This agreement would serve only as evidence tending to prove that such an agreement as claimed by the State had been made, but in and of itself is not such an agreement as the State contends it is.

The Court is of the opinion that this claim is just.

The next item of the claim is for the deduction of $965.00 because the claimant refused to paint the plastering in the building. The specifications for plastering offered in evidence by claimant contained the following language: "The surfaces of all plaster, including walls and ceilings, in all bath and toilet rooms on first and second floors, are to receive on coat boiled oil sizing, and two coats lead and oil paint, as directed. In all bath rooms this paint to be white followed by two coats approved white enamel. Paint plaster backs of all cases, without wood backs, in same manner."

The State on the other hand, offered in evidence a copy of specifications that were exactly the same except that the comma was omitted after the word "ceilings." The State contends that the contractor should have painted all plaster surfaces. On the other hand, claimant contends that the specifications did not call for painting of all plaster surfaces, but were limited to only bath and toilet rooms and placter backs of cases. Considerable argument is indulged in by counsel of both parties as to the effect of the insertion or omission of the particular comma. If the comma were inserted there would not be much doubt as to the intention.

A peculiar circumstance arises due to the fact that the word, "ceilings," as printed in both copies of specifications as offered, occurs at the very end of the line, and on the copy as offered by the State, there

would be no room for the insertion of a comma after the word, there being no room between the 1st letter of the word and the edge of the sheet upon which is written. In the copy as offered by claimant, there is sufficient room for a comma between the last letter of the word and the edge of the paper and a comma is there. The copy offered by the State is apparently a blue print, made from an original typewritten copy. There is no question but that the blue print offered by the State and the typewritten copy offered by the claimant, are identical. Every peculiarity of the typewriting and of the spacing are the same excepting that the lines on the page in question of the blue print copy begin an inch and a quarter from the left edge of the page, and on the typewritten copy about eleven-sixteenths of an inch from the left hand edge of the page.

We are satisfied that the trouble arises from the fact that the typewritten matter did not occupy exactly the same relative positions on the pages. The copy offered by the claimant contains sufficient space at the end of the line for a comma to appear; that offered by the State, due to the fact that the line begins farther to the right than in the other copy, does not contain space sufficient for a comma to appear.

We are satisfied that the comma appeared in the original specifications. The same paragraph of the specifications also contains the following language: "Paint plaster backs of all cases, without wood backs, in the same manner." It would seem that if it were contemplated that all walls should be painted that this would include the plaster backs of such cases and on the other hand if all walls were not to be painted, then there is reason for this specification, providing for paint in those particular places.

Prior to the making of the contract for this building, the contractor inquired of the architect as to the proper interpretation of this particular paragraph, and on the same day on which the contract was dated, viz., October 18, 1912, the State Architect wrote a letter containing the following language: "You are correct in figuring that only the bath and toilet room walls and ceilings are to be painted, but allow me to call your attention to the fact that these occur on the third floor as well as the remaining floors." We have here an interpretation of the contract prior to the beginning of the work, on the same day that the contract was dated, by the architect who drew the specifications.

There is also testimony in the record to the effect that in the construction of buildings, it is ordinarily not the custom to paint new plaster surfaces, except in bath rooms.

In addition to all this, for form of specifications used by the contractor, was furnished by the architect employed by the State, and the contractor had a right to reply on same in the form as furnished to him. We believe that claimant is entitled to an award on this item.

There remains now for our consideration the claim for damages occasioned by alleged delays on the part of the board in exercising the option in the choice of materials. It is provided in the contract that the contractor should give an alternate proposal for furnishing all metal specified copper, in No. 24 gauge galvanized iron, and that the alternate

bid shall be rejected or accepted within thirty days. This alternate bid was made, but the board did not exercise its option within thirty days. Claimant alleges that because of this fact it was put to greater expense because the price of material used increased $196.00 between the day on which he made the bid and the day on which he eventually bought the material. As we view this claim, the contractor would have been justified, and he should have purchased the material specified when the board did not exercise its option within the time limited. The material eventually used was the material as originally specified. This, of itself, is immaterial. However, had the contractor followed the clear language of the contract when the board did not exercise this option, this loss would not have occurred. In this view of the case, we do not believe that the claimant should receive any award on this item.

As above stated, we are of the opinion that the claim for $25.00 should be denied, the claim for $96.00 should be allowed, the claim for $965.00 should be allowed, and the claim for $196.00 for damages should not be allowed.

It is accordingly the judgment of this Court that claimant be awarded the sum of $1,061.00.